UNITED STATES *v.* UNION OLIVE OIL CO., INC. (No. 4636)[1]

United States Court of Customs and Patent Appeals, October 31, 1950

*David N. Edelstein,* Assistant Attorney General (*Joseph F. Donohue* and *Alfred A. Taylor, Jr.,* special attorneys, of counsel), for the United States.

*Siegel, Mandell & Davidson; Barnes, Richardson & Colburn; Jordan & Klingaman; Tompkins & Tompkins; Sidney Mandell* and *Joshua M. Davidson* (*Bland & Nairn, Oscar E. Bland* and *John W. Nairn* of counsel) for appellee.

[Oral argument October 4, 1950, by Mr. Donohue and Mr. Mandell]

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

Appellee imported at the port of New York 200 barrels of olives in brine from Greece, invoiced and entered as "black olives in brine."

The Collector of Customs classified the importation, pursuant to paragraph 744 of the Tariff Act of 1930, as "ripe olives in brine," which carries a duty of 30 cents per gallon. The importer protested the classification claiming the merchandise to be "green olives in

---

[1] C. A. D. 442.

brine" and dutiable under the same paragraph at 20 cents per gallon.

The involved paragraph reads as follows:

Par. 744. Olives: In brine, green, 20 cents per gallon; in brine, ripe, 30 cents per gallon; in brine, pitted or stuffed, 30 cents per gallon; dried ripe, 5 cents per pound; not specially provided for, 5 cents per pound.

The case was tried before the Third Division of the United States Customs Court, which rendered its judgment sustaining the protest pursuant to its decision, C. D. 1195. From the judgment this appeal was taken.

At the trial, counsel for appellee placed in evidence the record in the case of *A. G. Skourtsis* v. *United States*, T. D. 48218, together with an official sample of the merchandise involved in the instant case, and rested.

Counsel for appellant took the testimony of five witnesses and placed in evidence eight illustrative exhibits.

The issue in the *Skourtsis* case was the same as the issue herein and on March 17, 1936, the Third Division of the United States Customs Court rendered its judgment sustaining the protest of the importer in conformity with its decision of the same date. From that judgment no appeal was taken.

There, the plaintiff introduced the testimony of four witnesses, all of whom were importers of food products, including Greek olives. On behalf of the Government only one witness testified. He was an examiner of olive importations who had 15 years' experience in such duty. An illustrative exhibit was received in evidence said by the witness to be, in his opinion, a sample of imported ripe olives which were classified by him as such. Another exhibit of Greek olives, taken from another importation, was received in evidence as illustrative of ripe olives from Greece. It was stipulated that the involved olives which were imported in barrels and covered with brine, were of a pinkish color. Two witnesses for appellant testified that they had been in Greece and had observed the growing of olives such as were imported, and were familiar with the processes to which they were subjected. It was agreed by counsel that the other two witnesses for plaintiff would testify to the same effect as did the first two.

It appears from the testimony of plaintiff's witnesses in that case that the olives are harvested in Greece when they attain a reddish or pinkish color, which was said to be the beginning of maturity. It was said that they are then hard, of smooth skin, sound texture, and bitter taste. Such an olive, it was stated, contains but a small amount of oil. They are picked by hand from the trees and covered with a salt solution in large vats wherein they remain for one or two years, and they are then ready for shipment in barrels filled with brine. The brine solution was stated to be used for the preservation of the olives

without changing their texture, and also for the purpose of removing bitterness thereby rendering the olives sweeter.

All of the testimony for the plaintiff in the *Skourtsis* case is to the effect that the imported olives when picked from the trees were immature and, since they did not mature in the brine packing, were in the same state of development when imported as when picked. If they were tree ripened, the skin of the olive would be wrinkled, the meat softer, the color of both skin and meat black, and the oil content heavy. Such olives would be used for the expressing of olive oil therefrom. They are not picked, but either drop from the trees or are knocked therefrom with sticks.

The Government witness in the *Skourtsis* case testified that the olives, taken from a can which was one of the Government's illustrative exhibits upon which appeared "Baldji Brand Ripe Olives, Produce of Greece," were ripe olives although they had smooth skins and firm texture when subjected to digital pressure. They were, however, watery under the skin and when slit with a knife, disclosed a yellowish colored meat. Two of plaintiff's witnesses, upon being recalled, testified that the Baldji olives were green olives in that they possessed all the characteristics of unripe olives, and one of those witnesses stated that the Baldji olives had been boiled.

The court, in its decision in the *Skourtsis* case, stated that the same issue had been before it in the case of *Capolino & Bianco, Inc.* v. *United States*, T. D. 47420, on a rehearing from its Abstract decision, 23807. The olives in that case were called "Gaeta" olives, and the evidence disclosed that they had been picked while green or unripe and processed in a brine solution. The court noted that, in that case, testimony had been introduced for the purpose of establishing commercial designation, but that in the *Skourtsis* case no such attempt was made. The court quoted from the *Capolino* case, stating:

The testimony of these two witnesses [for the Government] is conflicting and fails to establish that, at and prior to the enactment of the Tariff Act of 1930, the term "ripe olives" had a definite, uniform, and general meaning in the trade and commerce of the United States. We must therefore resort to the common meaning thereof.

\*    \*    \*    \*    \*    \*    \*

As was stated in our original decision, the commonly understood meaning of the word "ripe" when applied to fruits is that they have matured. The evidence produced by the Government established that these olives were not mature.

The trial court in the *Capolino* case held the involved merchandise to be "green" rather than "ripe" olives in brine. It found nothing in the *Skourtsis* case to distinguish it from the *Capolino* case, and therefore, sustained the plaintiff's claim. No appeal was taken from the judgment in the *Capolino* case.

In the instant case, three of the Government's witnesses were men of wide experience in the buying and selling of olives; another, the

Executive Secretary of the Association of American Importers of Green Olives, and Secretary of the Associated Importers of Food Products; and the fifth, a Customs examiner at the port of New York, who passed on the involved merchandise.

We do not deem it necessary to set out in detail the testimony of those witnesses. It suffices to state that their testimony is to the effect that "green" olives are green in color and that "ripe" olives are from dark to purplish-black, such as appear in the exhibits. The evidence on behalf of the Government also shows that green olives are known to the trade as Spanish style and Sicilian olives, all of which are green in color.

It appears that the California green olives are picked from the trees when they have reached full size but before they have changed in color. After having been picked they are placed in a salt solution, fermented, sorted as to size and quality, and finally placed in brine ready for sale.

It appears that olives known as California green-ripe olives are bought and sold in the United States. Those olives have a mottled appearance, with dark spots on a green background, but their flavor is similar to that of the California black-ripe olives.

The California black-ripe olives are picked after they have grown to full size and their color is either green or just about to change. After picking, they are kept in a brine solution for a time and then subjected to a lye bath. Their color is changed by oxidization to a substantially uniform bluish or brownish black. Thereafter they are packed in brine for commerce.

The evidence appearing on behalf of the Government is to the effect that in the trade and commerce of the United States, "green" olives are of the so-called Spanish type, the larger of which are known as "queens" and the smaller "Manzanilla," as well as Sicilian olives. All of those olives are green in color, firm of texture and not so bitter as the raw olives. The record also is replete with testimony that in the trade and commerce of the United States, the California black-ripe olives are considered to be "ripe" olives. It appears that such meaning is definite, uniform, and general. The record on behalf of the Government further discloses that olives such as those here involved would not be accepted in trade as green olives. The color of the involved olives, as appears from the exhibits, is light brown.

The trial court, in its decision, held that commercial designation of the term "green olives" had not been established and that resort must therefore be had to the common meaning of the term. It quoted the definitions of the word "green" from *Webster's New International Dictionary* as meaning not ripened or matured, or immature, such as green fruit; and the word "ripe" meaning ready for reaping or gathering, or having attained perfection, or having matured; as is said of

fruits, seed, etc.; such as *ripe* grain. The court also quoted from *Funk & Wagnall's New Standard Dictionary* the definition of "green" as being not arrived at perfection or matured form or condition; immature, unripe; as green fruit; and the definition of "ripe" as grown to maturity and fitness for use as food: said of fruit, grain, etc.; as *ripe* apples and *ripe* wheat.

It was thought by the trial court that Congress intended no different result with respect to olives than it did in paragraphs of the act providing for specified fruits, green or ripe.

In support of that statement, the court quoted certain parts of the Summary of Tariff Information, 1929, with respect to olives in brine, green, and olives in brine, ripe, and from its understanding of the quoted portions of the *Summary*, stated:

It is clear from this that Congress understood that green olives were those picked before they had ripened and that ripe olives were those picked just before full maturity; that imported ripe olives were prepared differently than those produced in California; that dead-ripe black olives were used in the Greek process.

Because the involved olives were picked when they had turned pink in color and while the meat was hard and firm, the trial court held that they are green and conform to the green rather than the ripe type of olives in brine.

Congress might well have used the term "unripe" as contradistinguished to "ripe" olives; or might have used the term "green" as contradistinguished to the color "black." The primary meaning of the word "green" as it appears in the Funk & Wagnall's dictionary, is "of the color of herbage and growing plants; having the spectrum color between blue and yellow; verdant; as a *green* meadow; a *green* dress." The definition quoted by the trial court is the secondary meaning of the term "green."

The term "ripe" is defined in the same dictionary as "grown to maturity and fitness for use as food; said of fruit, grain, etc.; as *ripe* apples; *ripe* wheat.

In *Webster's New International Dictionary*, Second Edition, the word "ripe" is defined as follows:

Ready for reaping or gathering; having attained perfection, mature, said of fruits; seeds, etc.

and the term "mature" is defined as

Brought by natural process to completeness of growth and development; fitted by growth and development for any function, action, or state appropriate to its kind; full grown; ripe.

It appears from the definitions of the involved terms that the expression "green," with respect to fruits and grains, could mean either green in color or green because of immaturity.

It is trite to state that the master rule in the consideration of all statutes is to carry out the legislative intent.

The involved paragraph differs from paragraph 744 of the Tariff Act of 1922 merely on the rates of duties. In that act, the duty on ripe olives was 20 cents per gallon and that on dried-ripe olives 5 cents per pound, and no provision was made in the act for olives, not specially provided for, which are dutiable at the rate of 5 cents per pound under the present act.

In the *Summary of Tariff Information*, 1929, Vol. 1, beginning at page 1276, it is set forth that in the United States practically all green olives are grown in California, with a small production in Arizona. With respect to the preparation of green olives in brine, it is stated:

For the preparation of green olives in brine the fruit is picked after it has reached full size, but before it has ripened sufficiently to become tender. Fruit of an entirely green or straw color are preferred.

It then appears that

Only two kinds of olives [green] are generally known in the trade, Queens and Manzanillos.

On page 1278, of the same *Summary of Tariff Information,* we find the following:

OLIVES IN BRINE, RIPE

*Description and uses.*—Ripe olives are harvested just before full maturity to avoid bruising the fruit. In the United States the ripe olives are used for three purposes: (1) The production of canned ripe olives, (2) dried ripe olives, and (3) olive oil. In foreign countries the main use is for olive oil, but there is a considerable production of dried ripe olives in Greece and Italy. (See green olives; and olive oil.)

*Production.*—In the United States ripe olives to be canned are placed in a lye solution to remove the tannin; allowed to aerate to develop the deep brown color; washed with cold water to remove the lye; graded for size; and then packed in brine, in cans or bottles, and sterilized. *There is no similar production in any other country.* [Italics supplied.]

In a Summary of Tariff Information, 1921, published by the United States Tariff Commission, relative to H. R. 7456, at page 730, it is stated that the United States has a practical monopoly on the pickling of ripe olives, and, after describing the process through which the characteristic tinge develops in the production of black-ripe olives, it states as follows:

*Imports*, principally from Spain, ranged during 1910–1917 between 3,000,000 and 5,000,000 gallons, about five times the domestic crop. *They consisted of the highest-priced product, green olives, mostly "queens" or large-sized olives, and included relatively but a small amount of the lower-priced Manzanilla or small olives.* [Italics supplied.]

It appears to us from an examination of the before-mentioned Summaries of Tariff Information, that Congress was aware, at the time of the passage of the present tariff act, that in the olive commerce of the United States, the Spanish style olives, "queens" and "Man-

zanillos" were known to be olives green in color and that the ripe olives were those corresponding to the California black-ripe olive. We do not see how any other meaning can be gleaned from a complete search of the Summaries of Tariff Information.

Our tariff acts are written in the language of the trade and commerce of the United States. Therefore, in drafting the olive paragraph, Congress intended that the two kinds of olives in brine were to be such as were known in the trade.

The testimony of the witnesses, appearing on behalf of the Government, that the definite, uniform, and general meaning to be attached to green olives in brine, is that they are green in color and that ripe olives in brine are those olives known as the California ripe olive. Such testimony, in our opinion, completes the proof that at the time of and before the effective date of the Tariff Act of 1930, up to and including the present time, the involved merchandise cannot, for tariff purposes, be considered as being "olives in brine, green." We also think that the uncontradicted testimony that the involved merchandise could not be substituted in an order for green olives, is consistent with the intent of Congress and, of course, is entitled to some weight.

For the reasons hereinbefore set out, the judgment of the United States Customs Court is *reversed*.

GARRETT, C. J., and O'CONNELL, J., dissent.